S01Q0803. MILLER et al. v. HARCO NATIONAL INSURANCE COMPANY.
(552 SE2d 848)

CARLEY, Justice.

Byron Miller was involved in a collision in Michigan, caused by a truck which displayed the name "Shippers Services Express, Norcross, GA." Miller and his wife (Plaintiffs) brought suit in Michigan to recover for the injuries sustained in this collision, and obtained a default judgment against Shippers Services Express. Plaintiffs subsequently filed this action in the United States District Court for the

Northern District of Georgia against the following: Shippers Services Express, Inc. (Corporation); its sole shareholder, Galo Moya; Galo Moya d/b/a Shippers Services Express (Sole Proprietorship); and, Harco National Insurance Company (Harco), an insurer that had issued a motor carrier policy in which the only named insured was the Sole Proprietorship.

On cross-motions for summary judgment, the district court concluded that, despite a partial misnomer in the Michigan complaint, the default judgment was enforceable against the Corporation under Michigan law. The district court also pierced the corporate veil based upon the alter ego theory, and ruled that the Michigan judgment was enforceable against Moya and the Sole Proprietorship. The district court further found that the Michigan court had personal jurisdiction over Moya and that the Michigan judgment was entitled to full faith and credit. For these reasons, the district court granted summary judgment in favor of Plaintiffs and against the Corporation, Moya, and the Sole Proprietorship.

However, the district court also granted summary judgment in favor of Harco, concluding that there was no coverage because the policy insured only the Sole Proprietorship and the Corporation was the only entity against which the Michigan judgment was entered. The district court relied heavily on the holding in *Shelby Ins. Co. v. Ford*, 265 Ga. 232, 234 (454 SE2d 464) (1995) that it was with a corporation's sole shareholder, "as an individual, that [the insurer] contracted to provide insurance coverage, and that contract cannot be enlarged by the court to include as a named insured a wholly distinct legal entity." On appeal, the United States Court of Appeals for the Eleventh Circuit affirmed the district court's grant of summary judgment against the Corporation, Moya, and the Sole Proprietorship. *Miller v. Harco Nat. Ins. Co.*, 241 F3d 1331, 1332-1333 (11th Cir. 2001). With regard to the grant of summary judgment in favor of Harco, Plaintiffs argued that the primary issue "is not whether Harco would be liable under its policy for the Michigan judgment, but whether Harco is liable for the judgment issued in the district court against all the Moya defendants, including its named insured. . . ." *Miller v. Harco Nat. Ins. Co.*, supra at 1333. The United States Court of Appeals responded as follows:

> While we understand the district court's reluctance to "enlarge" the scope of coverage for the insurance contract, we are not adequately convinced that the public policy encompassed in legislation regarding motor carrier coverage (which allows for broad construction of motor carrier insurance coverage) and the narrow facts of this case do not dictate another conclusion. [Cit.]

*Miller v. Harco Nat. Ins. Co.*, supra at 1334. As a result, the federal appellate court certified the following three questions to this Court:

(1) Whether Georgia law recognizes a distinction between a suit against an individual doing business as a corporate entity and a suit against just the aforementioned legal entity? The question becomes whether insurance coverage given to final judgments against a named individual doing business as a corporate entity also provides such coverage when the final judgment is rendered solely against the corporate entity in suits under the motor common carrier provisions?

(2) When the insured party is found liable based on a theory of piercing the corporate veil, is the insurer then liable for the same, even if no independent coverage exists under the insurance policy?

(3) Does the mere fact that a court held the insured liable for an act covered by his policy create liability for the insurer?

*Miller v. Harco Nat. Ins. Co.*, supra at 1334. The particular phrasing used in these questions does not restrict our consideration of the issues, any restatement thereof, or the manner in which the answers are given. *Miller v. Harco Nat. Ins. Co.*, supra at 1334.

1. By its affirmance of the grant of summary judgment in favor of Plaintiffs based upon the alter ego theory, the Eleventh Circuit has determined that the Michigan judgment is enforceable not only against the Corporation, but also against the Sole Proprietorship, which is the named insured. To the extent that Harco questions that decision or the basis thereof, its arguments are unavailing. Whether Harco is contractually liable for the judgment is a separate issue from the tort liability of any of the other defendants.

Although the Eleventh Circuit has not determined the propriety of the grant of summary judgment in favor of Harco, it has correctly observed that, under Georgia law, motor carrier coverage is more broadly construed than is ordinary motor vehicle insurance coverage. An insurer, such as Harco, is subject to motor carrier "insurance provisions concerning third-party victims regardless of whether the insured timely notified the insurer, [cits.], or whether the particular truck in question is listed on the insured's policy. [Cit.]" *Miller v. Harco Nat. Ins. Co.*, supra at 1333. Thus, the Eleventh Circuit desires this Court's assistance only as to Harco's contention that there is no coverage because Plaintiffs did not recover a judgment against the insured, as required by a federally mandated policy endorsement, and Plaintiffs' assertion that the judgment against the

Sole Proprietorship in the Georgia federal domestication action satisfies that policy requirement.

2. The Eleventh Circuit's initial inquiry is whether Georgia law recognizes a distinction between a suit against an individual doing business as a corporate entity and a suit against just the legal entity itself. The court is apparently referring to the legal distinction between a corporation and its shareholders, since a sole proprietor cannot be distinguished from the individual.

An individual doing business under a trade name is clearly a sole proprietor distinct under Georgia law from a corporation in which that individual holds stock. *Southern Guaranty Ins. Co. v. Premier Ins. Co.*, 219 Ga. App. 413, 414 (465 SE2d 521) (1995). See also *Stansell v. St. Paul Fire &c. Ins. Co.*, 179 Ga. App. 74 (345 SE2d 151) (1986); *Lamas Co. v. Baldwin*, 120 Ga. App. 149, 150 (169 SE2d 638) (1969). If an insurer contracts to provide insurance coverage to a sole proprietor, the courts cannot enlarge the contract to include as a named insured the wholly distinct legal entity of a corporation, even if the sole proprietor owns a majority of the stock thereof. *Shelby Ins. Co. v. Ford*, supra at 234.

In its first question, the Eleventh Circuit further inquires whether an insurance policy provides coverage for final judgments against a corporation when it only specifies coverage for final judgments against a sole proprietorship. "[T]he construction of insurance policies, and, therefore, the scope of coverage, are matters of state law. [Cit.]" *T.H.E. Ins. Co. v. Larsen Intermodal Svcs.*, 242 F3d 667, 674 (II) (A) (1) (5th Cir. 2001). Although a policy provides coverage for final judgments recovered against the insured, it generally does not cover final judgments against a corporation in which the insured is the controlling stockholder. Because corporations and their shareholders are separate and distinct entities, insurance coverage for final judgments against the latter cannot ordinarily be enlarged to include final judgments against the former. See *Shelby Ins. Co. v. Ford*, supra at 234.

3. In its second question, however, the Eleventh Circuit asks specifically whether an insurer is liable whenever the insured party is found liable based on a theory of piercing the corporate veil. This particular issue is one of first impression in this state. Compare *Hogan v. Mayor & Aldermen of Savannah*, 171 Ga. App. 671, 673 (3) (320 SE2d 555) (1984). In answering this question, we reiterate that the Sole Proprietorship is a motor carrier and, thus, Harco is a motor carrier insurer. In this state,

> " '[t]he primary purpose of requiring a bond, policy of insurance or other security as a condition to the operation of public service motor vehicles for hire is for the protection of the

public, by assuring those who are injured, in person or property, through the negligent operation of such vehicles, compensation for the injuries or damages sustained.' [Cit.]"

*Seawheels, Inc. v. Bankers & Shippers Ins. Co.*, 175 Ga. App. 528, 532 (2) (333 SE2d 650) (1985). Thus, the insurance policy in this case is " 'in the nature of a substitute surety bond (which) creates liability in the insurer regardless of the insured's breach of the conditions of the policy. (Cit.)' [Cit.]" *Ross v. Stephens*, 269 Ga. 266, 267 (496 SE2d 705) (1998). See also *Andrews v. Yellow Freight System*, 262 Ga. 476 (421 SE2d 712) (1992). The intent of this state's motor carrier laws is " 'that the insurer is to stand in the shoes of the motor carrier . . . and be liable . . . in any instance of negligence where the motor carrier is liable.' [Cit.]" *St. Paul Fire & Marine Ins. Co. v. Fleet Transport Co.*, 116 Ga. App. 606, 609 (2) (158 SE2d 476) (1967). See also *American Cas. Co. v. Southern Stages*, 70 Ga. App. 22, 27 (27 SE2d 227) (1943).

A trade name such as that which denominates the Sole Proprietorship "is merely a name assumed or used by a person recognized as a legal entity. [Cits.] A judgment against one in an assumed or trade name is a judgment against him as an individual. [Cits.]" *Samples v. Ga. Mut. Ins. Co.*, 110 Ga. App. 297, 299 (138 SE2d 463) (1964). As other courts have held, " 'a trade name (is) nothing more than the alter ego of the individual.' " *Simmons v. Ins. Co. of North America*, 17 P3d 56, 61 (IV) (B) (1) (Alaska 2001). Thus, "[a] policy issued under the trade name of an individual is viewed as if issued under his given name." *Simmons v. Ins. Co. of North America*, supra at 61 (IV) (B) (1). Accordingly, a policy that lists a trade name as the "named insured" also extends coverage to the individual. *Purcell v. Allstate Ins. Co.*, 168 Ga. App. 863, 865 (310 SE2d 530) (1983); *Simmons v. Ins. Co. of North America*, supra at 62 (IV) (B) (1).

Such a policy does not ordinarily extend coverage to a corporation in which the same individual is a controlling stockholder, because corporations are generally separate legal entities from their shareholders. See *Simmons v. Ins. Co. of North America*, supra at 62 (IV) (B) (1), fn. 30. However, it is not appropriate to apply this limitation in the rare case where the corporation is not a separate entity, but rather is an alter ego of its controlling stockholder, at least where the business involved is a motor carrier. Viewing that situation in light of the purpose of the motor carrier laws, the corporation should be considered as a named insured even though the insurance policy is issued in the name of its shareholder doing business under a trade name. Where, as here, there has been a judicial determination that a corporate motor carrier is the alter ego of its controlling shareholder, *Shelby Ins. Co. v. Ford*, supra, is distinguishable. *Shelby* did not

involve either a motor carrier or a piercing of the corporate veil. Its holding applies only to the expansion of insurance coverage "to include as a named insured a wholly distinct legal entity." *Shelby Ins. Co. v. Ford,* supra at 234. By definition, two entities are not legally distinct when they are alter egos. See *McLean v. Continental Wingate Co.,* 212 Ga. App. 356, 360 (2) (442 SE2d 276) (1994). "Under the alter ego doctrine, equitable principles are used to disregard the separate and distinct legal existence possessed by a corporation. . . . [Cits.]" *Kissun v. Humana,* 267 Ga. 419-420 (479 SE2d 751) (1997).

Furthermore, under persuasive federal authority, the fact that the liability of the Sole Proprietorship was not based on any negligence directly attributable to it, but rather entirely on the alter ego theory, does not preclude coverage under the terms of Harco's motor carrier policy. *Integral Ins. Co. v. Lawrence Fulbright Trucking,* 930 F2d 258 (2d Cir. 1991). In that case, the named insured was liable solely because of his status as owner of the truck, but the insurer was still required to indemnify even though neither the insured nor his agents were actively negligent.

> The plain meaning of the endorsement requires only (1) a final judgment against the insured which (2) arises out of the negligent operation, maintenance or use of the motor vehicle. Had the Secretary [of Transportation] intended the judgment to be founded only upon the insured's own active negligence, the endorsement would read "any final judgment recovered against the insured for public liability resulting from *the insured's* negligence in the operation, maintenance, or use of motor vehicles." [Cit.] . . . The goal of ensuring a monetary recovery by an injured party against a motor carrier would be thwarted if the insurer had to indemnify accident victims only where the insured carrier was itself actively negligent.

(Emphasis in original.) *Integral Ins. Co. v. Lawrence Fulbright Trucking,* supra at 260-261. The Corporation was liable for the negligent operation of the truck in Michigan. The district court in Georgia found that the Sole Proprietorship was liable for that tort judgment under the alter ego theory. Thus, Plaintiffs obtained against Harco's named insured a final judgment arising out of the negligent operation of a motor vehicle.

4. In the third question, the Eleventh Circuit inquires whether the mere fact that a court held the insured liable for an act covered by his policy creates liability for the insurer. With respect to the motor carrier policy at issue in this case, we answer the question in the affirmative. That policy requires Harco to pay any final judgment

against the Sole Proprietorship, as named insured, for an act of negligence involving its vehicle, no matter who committed that act. Because the Eleventh Circuit has affirmed Plaintiffs' judgment against the Sole Proprietorship, Harco cannot evade contractual liability by asserting that only the Corporation was responsible for the actual negligent act.

*Certified questions answered. All the Justices concur.*

DECIDED SEPTEMBER 17, 2001 —
RECONSIDERATION DENIED OCTOBER 22, 2001.

*Roger F. Huff, John M. Morrow,* for appellants.
*Dennis, Corry & Porter, R. Clay Porter, Thomas D. Trask,* for appellee.